FIDELITY UNION TRUST COMPANY, as trustee under the last will and testament of Frederick C. Farley, deceased, complainant,

*v.*

LAURA A. FARLEY et al., defendants.

[Decided May 21st, 1940.]

*Messrs. Hood, Lafferty & Campbell,* for the complainant.

*Messrs. Whiting & Moore,* for the defendant Clinton De Witt Van Siclen, executor of the last will and testament of Marion Farley Strichler, deceased.

*Mr. Roger Hinds,* for the defendant Laura A. Farley.

*Messrs. Pitney, Hardin & Skinner,* for the defendants Edith V. F. Stridsberg, Helen E. B. F. Bleeker and Frederick Channing Farley.

*Mr. David A. McBride,* for the defendant Albert G. Borden, as surviving administrator with the will annexed of the estate of Julie Farley Camp, deceased.

STEIN, V. C.

Frederick C. Farley died on May 9th, 1911, leaving a last will and testament probated in the Essex county surrogate's office on May 22d, 1911. The will provided *inter alia:*

"Eighth: I give unto my daughter Marion Farley Strichler for her use during her lifetime, all my lands lying west of Marion Avenue, north of Old Short Hills road and south of Glen Avenue; and I direct my executors hereinafter named and the survivor to make sale of the said lands as speedily as may be after my decease and to pay over the proceeds of such sale or sales unto the Fidelity Trust Company of the City of Newark, its successors and assigns, to be held by said Company as trustee for the said Marion Farley Strichler, and the net income therefrom to be paid quarterly to her during her lifetime as she shall require, and at her death the principal thereof to be paid to her surviving child or children if any she have. In the event that she should die without leaving a child or children her surviving, then I direct that the remaining land described in this paragraph and the moneys held in trust as aforesaid shall become a part of the residuary of my estate to be distributed in the manner hereinafter provided."

"Fourteenth: All the rest, remainder and residue of my estate, both real and personal, I order and direct my said executors to divide

into three parts or shares as nearly equal as may be and I give and devise the same as follows:

"One part or share thereof unto my said daughter Julie Farley Camp, for her sole and separate use, to have and to hold unto her, her heirs and assigns forever.

"One part or share thereof unto my son Frederick A. Farley, to have and to hold unto him, his heirs and assigns forever.

"One part or share thereof unto the Fidelity Trust Company of Newark, its successors and assigns, in trust, to hold, manage, invest and reinvest the same in such manner as shall ·be deemed expedient and to pay the net annual income thereof in quarterly payments unto my daughter Marion Farley Strichler, for her sole and separate use during her natural life, and at her death, to pay over the principal thereof unto any child or children born of her and her surviving; or in the event of her decease without leaving any child or children or issue of any child or children her surviving, then and in that event to pay over and divide the principal and any accrued interest thereon unto and between my said daughter Julie Farley Camp and my said son Frederick A. Farley, their heirs and assigns, share and share alike, *per stirpes* and not *per capita.* * * *"

The trusts created by the eighth and fourteenth paragraphs of testator's will terminated upon the death of Marion Farley Strichler, the life beneficiary, who died March 7th, 1938, without leaving any child or children her surviving.

Complainant, Fidelity Union Trust Company, the testamentary trustee having filed its account, prays the instruction of the court as to the distribution of the *corpus* of the several trusts; the construction of the fourteenth paragraph of testator's will and the determination by the court whether a certain instrument in writing by Frederick A. Farley to Julie Farley Camp dated May 14th, 1914, was by the parties intended to be a deed or a mortgage.

The testator left him surviving three children, Frederick A. Farley, Julie Farley Camp and Marion Farley Strichler. Frederick A. Farley died July 5th, 1920, testate, and in his will gave his entire estate to his wife, Laura A. Farley. He left him surviving three children, Edith V. F. Stridsberg, Helen E. B. F. Bleeker and Frederick Channing Farley, who by counter-claim filed herein pray the construction of the eighth and fourteenth paragraphs of testator's will, and in which counter-claim they claim to be entitled to the principal of the several trusts as heirs of Julie Farley Camp and Frederick A. Farley. Julie Farley Camp died on April 8th, 1922, without issue.

By the eighth paragraph of the testator's will the *corpus* of the trust therein created, in the event of the death of Marion Farley Strichler, the life beneficiary, without leaving a child or children her surviving, becomes part of testator's residuary estate and is to be distributed in the manner provided by the fourteenth paragraph of the will in which paragraph the testator directs that the remainder of his estate be divided into three parts, one to his daughter, Julie Farley Camp; another to his son, Frederick A. Farley. These two parts or shares vested in the said Julie Farley Camp and Frederick A. Farley, respectively, upon the death of the testator, subject only to be divested upon the happening of the contingency provided in the eighth paragraph of the will. The remaining one part or share, by the terms of the will was held in trust by complainant for the benefit of Marion Farley Strichler during her life, and upon her death without leaving a child or children or issue of any child or children her surviving, the principal and accrued interest thereon was to go to Julie Farley Camp and Frederick A. Farley, "their heirs and assigns, share and share alike, *per stirpes* and not *per capita.*" The difficulty arises because of the legal phrase *per stirpes and not per capita.*

Generally a gift to a named person "and his heirs" is a gift to that person alone. "It is established law that a legacy to A 'and his heirs' lapses upon the death of A in the lifetime of the testator, the word 'heirs' being a word of limitation and not of substitution. * * * The ordinary or technical meaning of words may be disregarded, and a special meaning accepted, if such intention of the testator can be gathered from the whole will * * *. The word 'and' in the phrase 'and his heirs' may be taken in the sense of 'or' if such meaning is plainly indicated. * * * The rule of construction, however, founded largely upon technical usage, is settled * * * that a gift in form to A and his heirs is a gift to one donee, not two." *Zabriskie* v. *Huyler, 62 N. J. Eq. 697;* affirmed, *64 N. J. Eq. 794.* See, also, *Sadler* v. *Bergstrom, 113 N. J. Eq. 567; 168 Atl. Rep. 50.*

*Per stirpes* is defined in *Bouvier's Law Dictionary:*

> "By or according to stock or root; by right of representation. When descendants take by representation of their parent, they are said to take *per stirpes;* that is, children take among them the share which their parent would have taken, if living."

The words *per stirpes* are ordinarily used to denote substitution in case of the death of the primary legatee.

The gift is to Julie Farley Camp and Frederick A. Farley, their heirs and assigns, share and share alike, *per stirpes* and not *per capita.* The two phrases are irreconcilable. The gift to Julie Farley Camp and Frederick A. Farley "their heirs and assigns" have a fixed and definite meaning in law and unless it can be found from other parts of the will that it was the testator's intention to substitute the heirs in case of the death of the primary legatees then the phrase *"per stirpes and not per capita"* must be disregarded as surplusage.

With the exception of certain minor bequests, the will discloses that the predominant intention of the testator was to dispose of his entire estate among his three children. The nature and extent of the several gifts to these children indicates an equal division among them. The share of Julie Farley Camp and Frederick A. Farley were given them outright. The share of Marion Farley Strichler was limited to a life estate. The reason for this does not appear. The only indication in the will that testator had any donative intent beyond his children, is in the disposition of the remainder of Marion's share, which he gave to her surviving child or children, if any, and if not, then to Julie Farley Camp and Frederick A. Farley. There is nothing in testator's will to indicate that he intended to substitute the heirs of Julie Farley Camp and Frederick A. Farley in the event of their death before the life estate terminated as contended by the counter-claimants. In the absence of such intention, to give effect to the phrase *per stirpes* and not *per capita,* would amount to remaking the will. The gift of the remainder to Julie Farley Camp and Frederick A. Farley vested in them upon the death of the testator subject only to be divested if Marion Farley Strichler left a child or children surviving her. *Van Dyke's Adm'r* v. *Vanderpool's Adm'r, 14 N. J. Eq. 198; Miers* v. *Persons, 92 N. J. Eq. 17; 111 Atl. Rep. 638.*

Frederick A. Farley in his lifetime executed a written instrument dated May 14th, 1914, and recorded in the Essex county register's office on May 20th, 1914, which on its face purports to be an absolute conveyance to Julie Farley Camp of all his interest under the fourteenth paragraph of the will of his father, Frederick C. Farley. The instrument reads:

"* * * do give, bargain, sell, transfer, assign, set over and convey unto my sister Julie Farley Camp, wife of Edward Camp, all my right, title and interest in and to the undivided share or portion of the real and personal estate of my father Frederick C. Farley, as bequeathed and devised to me by the fourteenth clause of the will of my said father dated January 29th, 1903, proved before the Surrogate of Essex County May 22d, 1911, to have and to hold the same unto her, her heirs and assigns forever. I authorize and direct the executors of my father's estate, in confirmation of my action, to convey to my said sister the undivided one-third portion of the unsold real estate of which my father died seized, and to which I would have any right, title or interest in and by the said fourteenth clause of said will."

Laura A. Farley the widow of Frederick A. Farley and sole beneficiary under his will contends that this instrument is not an absolute deed of conveyance but a mortgage in fact, given to secure past and future indebtedness of Frederick A. Farley to Julie Farley Camp.

"If a conveyance absolute in form was intended by the parties to be only a mortgage, the court will so decree and establish the instrument as a mortgage. 'The question turns upon the actual intention of the parties at the time of the transaction.' *Papsco* v. *Novak, 94 N. J. Eq. 642.* To justify a decree for complainant, the proofs must be clear and convincing." *Titus* v. *Wallick, 114 N. J. Eq. 171; 168 Atl. Rep. 453.*

In *Pace* v. *Bartles, 47 N. J. Eq. 170; 20 Atl. Rep. 352,* three *criteria* are given for determining whether an absolute conveyance was intended as a mortgage. First, was there a debt created either at the date of the deed or existing prior thereto which was not paid and satisfied by the conveyance but which survived, so that the grantee might have sued upon it? Second, was the price paid considerably less than the value of the property granted? Third, what was the conduct of the parties with regard to the possession and use of the

property after the date of the deed? See, also, *Titus* v. *Wallick, supra; Depew* v. *Smith, 120 N. J. Eq. 285; 184 Atl. Rep. 823.*

The instrument here in question was made over twenty-five years ago. Both the grantor and grantee are dead. There is no evidence before the court by anyone who was familiar with the transaction or had any knowledge of it. The proofs offered in support of defendant's claim consists of two notes, one dated October 21st, 1915, in the amount of $200 made by Frederick A. Farley to Edward B. Camp; the other dated December 30th, 1915, in the amount of $500 made by Frederick A. Farley to Julie B. Camp. Both notes were made approximately a year and a half after the date of the deed, and shed no light on the transaction or as to the intention of the parties.

There is also in evidence a paper-writing dated March 14th, 1922, purporting to be a will of Julie Farley Camp, but which paper-writing was denied probate in New York. In the second paragraph of this paper-writing she provided that in the event of her decease before the sale of a tract of land known as the "Brugiere Tract" and which formed a part of the one-third share conveyed by Frederick A. Farley to her she ordered and directed "my executors from the proceeds of said one-third share so heretofore assigned to me, to retain for my estate thereout such sum as is due and owing to me by my said brother with interest thereon, and also that portion of the taxes which I shall have paid and moneys expended in connection with the said one-third, and I give and bequeath the same unto my sister, Marion F. Strichler, should she survive me, and in case she should not survive me, then I give and bequeath the same to such person or persons as she may by will appoint; and *I give, devise and bequeath* unto the children of my deceased brother the *remainder of such proceeds*, share and share alike, the issue of such child as shall have predeceased me to take the parent's share, *per stirpes* and not *per capila."* This paper-writing was offered for the purpose of establishing a debtor-creditor relationship between Julie Farley Camp and her brother, Frederick A. Farley. But if such was the purpose it fails, since the tes-

tatrix treats in this instrument the mentioned instrument as an absolute conveyance in that she treats the one-third share as her own, and devises and bequeaths unto the children of her deceased brother the *"remainder of such proceeds"* of sale. (Italics mine.)

There is also in evidence a written agreement dated October 1st, 1916, between Frederick A. Farley and Edward B. Camp (husband of Julie Farley Camp), containing recitals to the effect that Frederick A. Farley had an interest in the unsold lands of the estate of Frederick C. Farley. The agreement did not concern any matters at issue herein and was offered to show that Frederick A. Farley was still interested at the date of the agreement in the unsold lands in the estate of his father, Frederick C. Farley.

Another exhibit in evidence is an agreement dated December 11th, 1924, made between the representatives of the estate of Frederick A. Farley, the estate of Julie Farley Camp and the estate of Edward B. Camp. The agreement concerned the proceeds from the sale of the "Brugiere Tract." Under this agreement the defendant Laura A. Farley individually and as executrix of the estate of Frederick A. Farley, received $2,300 in addition to the cancellation of the two notes hereinbefore mentioned. This agreement was entered into after the defendant Laura A. Farley had instituted a suit in this court to have the deed of May 14th, 1914, declared to be a mortgage. The agreement provided that the suit be discontinued and reserved to the defendant Laura A. Farley any rights which she may have as executrix of and sole beneficiary under the will of Frederick A. Farley in the estate of Frederick C. Farley. It is of no help in the determination of the primary question here. Like the other proofs it was made over fifteen years after the deed transaction, and sheds no light upon the transaction or the intention of the parties at the time the deed was executed.

Mr. William A. Kirk, attorney for Frederick A. Farley for several months prior to his death, and who represented his estate and was solicitor of record for the defendant Laura A. Farley in this suit (since substituted by another solicitor) testified that in the year 1920 he had two conversations with

Julie Farley Camp and her husband, Edward B. Camp, concerning the deed in question. He said the occasion for these conversations was an inquiry of the Camps as to the amount due them from Frederick A. Farley which information he required in the preparation of the inheritance tax proceedings in the estate of Frederick A. Farley. The witness said that Julie Farley Camp in both of these conversations told him that Frederick A. Farley owed her and her husband, Edward B. Camp, large sums of money and that the "assignment" (deed) was given to secure loans which they had made to him at the time and subsequently. Such testimony standing alone is not sufficient to overcome the effect of the deed here in question. In *Wilson* v. *Terry, 70 N. J. Eq. 231; 62 Atl. Rep. 310; affirmed, 71 N. J. Eq. 785; 65 Atl. Rep. 983,* the court held that evidence of subsequent oral admissions by a grantee that an absolute deed was intended as a mortgage is not sufficient without corroborating circumstances to establish this fact, and added, "And certainly evidence of this character, in order to divest the title to lands and to overcome the effect of the previous conduct of the parties * * * must be scrutinized with great caution, after the death of Mrs. Wilson, and be very clear and convincing."

Considering all of the testimony it is concluded that the defendant Laura A. Farley has failed to prove her claim. The *criteria* laid down in *Pace* v. *Bartles, supra,* have not been established by the evidence since there is (1) no proof that a debt was created at the date of the deed or existed prior thereto, save the uncorroborated subsequent oral admission of the grantee testified to by Mr. Kirk; (2) there is no proof that the consideration paid was less than the value of the property, and (3) so far as the proof is concerned with relation to the conduct of the parties with regard to the property subsequent to the date of the deed, such proof militates against the claim of the defendant as hereinbefore quoted from the paper-writing purporting to be the will of the grantee.

The trustee is instructed to pay the principal of both trusts to Albert G. Borden as surviving administrator *cum testamento annexo* of Julie Farley Camp, deceased.