No. 94-238

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN THE MATTER OF THE ESTATE OF

KARL F. LINDGREN,

Deceased.

FILED

NOV 23 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Fifth Judicial District,
In and for the County of Jefferson,
The Honorable Frank M. Davis, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

John T. Jones, Moulton, Bellingham, Longo & Mather,
Billings, Montana

For Respondent:

Gene A. Picotte, Helena, Montana


Submitted on Briefs: October 13, 1994

Decided: November 23, 1994

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a probate order issued by the Fifth Judicial District Court, Jefferson County. We reverse in part and affirm in part.

We consider the following issues on appeal:

I.    Did the District Court err in ordering the Trustee to invade the Trust estate to the extent of paying one half of Anna D. Lindgren's monthly health care and housing costs?

II.   Did the District Court err in denying the Conservator's request for reimbursement of the nursing care and housing costs that Anna D. Lindgren's conservatorship incurred prior to June 1, 1994?

III.  Did the District Court err in ordering the Trustee to invade the Trust estate to pay one-half of Anna D. Lindgren's burial and funeral expenses?

IV.   Did the District Court err in denying Conservator's request for attorney fees?

Karl F. Lindgren (hereinafter Decedent) died on April 15, 1993, in Lewis & Clark County, Montana. Decedent's will established a Trust in which his surviving spouse, an Alzheimer sufferer, is the sole beneficiary (hereinafter referred to as Beneficiary.). The Trustee of the Trust is Decedent's cousin, Gladys E. Tellessen (hereinafter referred to as Trustee.) The purposes of the Trust are to "provide for and assure so far as possible, the generous care and support" of Beneficiary during her lifetime and to pay for her burial and funeral expenses.

On August 2, 1993, the Thirteenth Judicial District Court, Yellowstone County, appointed Patsy A. Martin (hereinafter referred to as Conservator), daughter of Beneficiary, to serve as the

2

guardian and conservator for Beneficiary, due to her deteriorating condition. Beneficiary resides in a Billings nursing home and incurs $3,000 per month nursing care expenses. Conservator has requested that the Trustee of the Testamentary Trust assist the conservatorship by providing for the monthly care of Beneficiary. Trustee has refused all such requests for aid because Beneficiary has failed to establish a financial need.

Conservator petitioned the probate court for an order requiring the Trustee of Karl Lindgren's Testamentary Trust to distribute income and/or principal from the Trust to pay for Beneficiary, Anna D. Lindgren's nursing care, medications, and expenses. Also, the petition sought reimbursement for the funds Conservator had expended on the care of Beneficiary since the death of Mr. Lindgren.

The court issued its findings and order on April 22, 1994. That order ruled that the Trustee must invade the Trust to pay for one-half of Anna Lindgren's monthly health care and housing costs and one half of her burial and funeral costs. Also, in that order the court denied the request for reimbursement of Beneficiary's expenses from the time period of her husband's death to June 1, 1994. Finally, the court denied Conservator's request for attorney fees.

Conservator filed a Notice of Appeal on May 18, 1994; she amended, and refiled the appeal on May 24, 1994. Trustee filed a Notice of Cross-Appeal on June 1, 1994.

3

Did the District Court err in ordering the Trustee to invade the Trust estate to the extent of paying one half of Anna D. Lindgren's monthly health care and housing costs?

Conservator argues that the wording of the Trust makes it clear that the Trust was supposed to assume the expense of Beneficiary's care and support following the death of Karl Lindgren. Conservator contends that the Trustee abused her discretion by refusing all requests for help.

The respondent Trustee argues that the word "Necessary" in the Trust means that Beneficiary must expend her own funds before the Trustee invades the Trust.

The following are the pertinent provisions of the Will:

1. The term of this Trust is from the time of my death to the time of death of my wife, ANNA DELL LINDGREN. If said wife shall not survive me, this Trust shall not come into existence.

2. The sole beneficiary of this Trust is my said wife, ANNA DELL LINDGREN.

3. The purposes of this Trust are to provide for and assure, so far as possible, the generous care and support of my said wife, ANNA DELL LINDGREN, after my death for so long as she shall live and to provide for funeral, burial, and any other expenses attendant upon and resulting from her death.

4. The Trustee shall, in her, his or its sound discretion, pay to or apply for my said wife as much of the Trust income and Trust principal as Trustee deems necessary for her support, care and health during her life time. The discretion of the Trustee shall be exercised liberally in favor of my said wife, it being my intention that she shall have, in addition to the necessities, a reasonable number of the luxuries of life, if she desires them.

5. The Trustee shall have all of the powers, duties, and obligations set forth and described in Sections 72-21-101 through 72-21-206, MCA. Any other powers, obligations and duties in any other applicable laws of the State of Montana are also conferred upon the Trustee.

4

6. Upon the death of my said wife after my death, this Trust shall terminate and the Trustee shall, with deliberate speed, convert the Trust property entirely to cash, and after payment of all debts and obligations of the Trust, if any, distribute absolutely and unconditionally all thereof to the beneficiaries and in the amounts and proportions designated and determined by the provisions of Paragraph SEVENTH, hereinafter.

This Court reviews a district court's findings as to whether they are clearly erroneous; that is whether they are supported by substantial evidence, whether the court correctly apprehended the evidence, and despite the satisfaction of the first two concerns, whether we are still left with a firm conviction that a mistake has been made. Tonack v. Montana Bank of Billings (1993), 258 Mont. 247, 854 P.2d 326. The Supreme Court's review of a district court's conclusions of law is simply whether the conclusions are correct. Weber v. Rivera (1992), 255 Mont. 195, 841 P.2d 534.

The court found that the discretionary provisions of the Trust justified the Trustee in denying Conservator's request for contribution to Beneficiary. The court found that there was no "need" for the Trust to be invaded. Having said this, however, the court went on to determine that the true spirit and intent of the will had been contradicted. The court then charged the Trust with one half of Beneficiary's future expenses and one half of her future funeral and burial expenses. The court denied retroactive contributions from the Trust concerning Mrs. Lindgren's care upon her husband's death and also denied Conservator's request for attorney fees.

The District Court specifically points to the word "need" and roots its decision there. The Court should determine the

5

testator's intent, the ruling concern, by analyzing the will in its entirety, not select provisions on their own. Matter of Estate of Evans (1985), 217 Mont. 89, 704 P.2d 35. In analyzing the entire Trust as a whole, we are left with the firm conviction that Karl Lindgren carefully worded the instrument to carry out the specific purpose of caring for his wife from the time of his death to her own death. If the wording of the will is clear and unambiguous, the court shall not consider extrinsic evidence or the circumstances surrounding the execution of the will. Matter of Estate of Greenfield (1988), 232 Mont. 357, 757 P.2d 1297.

What the District Court did was to set the word "need" above the intent of the Trust. That one word cannot be construed in such a way as to negate or even diminish the sole purpose of the Trust which was to provide Mr. Lindgren's beloved wife with monetary support for both necessities and luxuries during her life and for funeral and burial expenses upon death. We will not interpret the liberal Trust language by way of a limited reading of the word "necessary," referred to by the court as "need." The Trust does not itself contain any limiting language. While the Trust states that the Trustee has sound discretion it also directs the Trustee to exercise that discretion "liberally" in favor of Mrs. Lindgren. There is nothing in the record to indicate that the Trustee adopted this liberal attitude toward the care of the Beneficiary. The Trustee denied every request for help from Mrs. Lindgren's Conservator. The denial was not in compliance with the purposes of the Trust.

6

The Trustee would have us determine that Mrs. Lindgren must expend or dispose of her personal estate before the Trust can be invaded. The Trust does not provide for the expenditure of Beneficiary's estate before any payments are to be made from the Trust. We will not read into the instrument this limitation. Nor will we consider case law from other jurisdictions when the Trust instrument itself is clear.

We can reach no other conclusion than that the Trust itself is clearly worded to provide for Mrs. Lindgren's total care from the time of Mr. Lindgren's death until Mrs. Lindgren's own death. Therefore, it is the Trust itself that is solely liable for Mrs. Lindgren's care from the day her husband died. We hold that the District Court erred in ordering the Trustee to invade the Trust estate to the extent of paying one half of Anna D. Lindgren's monthly health care and housing costs.

We reverse the court order requiring the Trust to pay for only half of Mrs. Lindgren's expenses and direct the District Court to enter an order for the Trustee to pay for Mrs. Lindgren's total living and medical expenses.

II

Did the District Court err in denying the Conservator's request for reimbursement of the nursing care and housing costs that Anna D. Lindgren's conservatorship incurred prior to June 1, 1994?

In its April 22, 1994 order the court directed the Trustee to pay for one half of Mrs. Lindgren's expenses beginning after June

7

1, 1994. Appellant argues that she should be reimbursed for the money she spent from her mother's personal finances on her mother's care before June 1, 1994. Respondent merely argues that Mrs. Lindgren's funds must be consumed before the Trust begins.

Again, we emphasize that the clear language of the Trust states that it begins "from the time of my death to the time of death of my wife, ANNA DELL LINDGREN." Therefore, the testator's clear intent is that the Trust begin at his death. Because the Trustee failed to pay for any of Mrs. Lindgren's expenses in the manner in which the Trust directs, the court erred in refusing to reimburse Mrs. Lindgren's Conservator.

We reverse the court's refusal to reimburse the Conservator for funds expended heretofore on Mrs. Lindgren's care. The court is directed to order the Trustee to reimburse the Conservator for all monies already spent for the care of Mrs. Lindgren from the date of Mr. Karl Lindgren's death.

III

Did the District Court err in ordering the Trustee to invade the Trust estate to pay one-half of Anna D. Lindgren's burial and funeral expenses?

In addition to requiring the Trust to pay for half of Mrs. Lindgren's expenses, the court ordered the Trust to pay for half of her burial and funeral expenses. Appellant argues that the Trust provided for the complete payment of Mrs. Lindgren's funeral and burial expenses.

According to paragraph 3 of the Testamentary Trust, the

8

Trustee has no discretion in paying Mrs. Lindgren's complete funeral and burial expenses. We hold that the District Court erred in splitting the cost between the parties. We reverse the District Court's ruling on this issue and direct the court to issue an order that the Trust will be fully responsible for all burial and funeral expenses.

IV

Did the District Court err in denying Conservator's request for attorney fees?

Appellant argues that the court should have awarded her attorney fees because she had to file this action in order to force the Trust to begin its prescribed duties. Respondent argues that in absence of a special statute, or stipulation of the parties, or rule of court, that attorney fees cannot be awarded.

The District Court denied attorney fees. In this, the court was correct. The longstanding rule in Montana is that, absent statutory or contractual authority, attorney fees will not be awarded. Goodover v. Lindey's (1992), 255 Mont. 430, 843 P.2d 765. There is no statutory or contractual requirement for an award of attorney fees.

In certain instances in which bad faith or malicious behavior are involved, this Court has made an equitable award of attorney fees. Goodover, 255 Mont. at 446, 843 P.2d at 774-75. However, this equitable consideration is only invoked infrequently. Goodover, 255 Mont. at 446, 843 P.2d at 775. The record does not show either bad faith or malicious behavior. We affirm the denial

9

of attorney fees.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

10

Justice Terry N. Trieweiler specially concurring.

I concur with the result of the majority opinion, but for reasons other than those set forth in that opinion.

Paragraph 4 of Karl Lindgren's testamentary trust directed the trustee to pay from trust income and principle those expenses "necessary for her [Anna's] support, care, and health during her lifetime." (Emphasis added.) The issue in this case is simply whether the term "necessary" describes the type of expenses to be paid for, or Anna's financial need that those expenses be paid by the trust.

This issue has been resolved in other jurisdictions based on reasoning and precedent that I conclude is persuasive.

In *Godfrey v. Chandley* (Kan. 1991), 811 P.2d 1248, the decedent established a testamentary trust for the benefit of his surviving spouse. In that trust, he provided that net income of the trust was to be paid to the beneficiary "'as may be necessary for her support, health and maintenance.'" *Godfrey*, 811 P.2d at 1250 (emphasis added). The Supreme Court of Kansas was asked to decide, as we are, whether the beneficiary was entitled to the trust income for her support, health, and maintenance without regard to her personal income. The remainderman named in the will argued that the term "necessary" limited expenditures from trust income to "only those expenses which exceeded [the beneficiary's] personal income." *Godfrey*, 811 P.2d at 1251. However, in concluding

11

otherwise, the Supreme Court of Kansas set forth the following rules of interpretation:

> Whether a trustee can consider the personal income of a trust beneficiary is to be determined from the language of the instrument and surrounding circumstances. See Bogert, Trusts and Trustees § 811, p. 229 (rev. 2d ed. 1981). Where the trust settlor manifests an intention that the trust property be applied to the beneficiary's support only if and to the extent the beneficiary is in actual need, then the beneficiary is not entitled to support from the trust fund if other sufficient resources are available. See *Dunklee v. Kettering*, 123 Colo. 43, 46, 225 P.2d 853 (1950); *First National Bank of Catawba County v. Edens*, 55 N.C.App. 697, 704, 286 S.E.2d 818 (1982). See generally 2 Scott on Trusts § 128.4 (Fratcher 4th ed. 1987). On the other hand, where a settlor directs the trustee to pay the beneficiary so much as is necessary for support and maintenance, an inference arises that the settlor intended the beneficiary to receive support from the trust estate, regardless of other income. See *Taylor v. Hutchinson*, 17 Ariz.App. 301, 304-05, 497 P.2d 527 (1972); *Estate of Wells v. Sanford, Trustee*, 281 Ark. 242, 246-47, 663 S.W.2d 174 (1984); *Hamilton Nat. Bank v. Childers*, 233 Ga. 427, 428, 211 S.E.2d 723 (1975); *In re Coats Trust*, 581 S.W.2d 392, 393-96 (Mo.App.1979); see Restatement (Second) of Trusts § 128, comment e (1957).

*Godfrey*, 811 P.2d at 1251.

For these reasons, the Kansas Court held as follows:

> We hold the trustee shall pay Peggy support, health, and maintenance for the period of her natural life irrespective of her individual income. The testator obviously intended to provide maintenance for his wife for her life. His provision is limited only by what is necessary. In other words, it cannot be used to provide nonessential items.

*Godfrey*, 811 P.2d at 1253.

The same interpretation of the word "necessary," as it described expenditures from a testamentary trust, was applied in

12

*Renner v. Castellano* (N.J. Super. Ct. Ch. Div. 1952), 91 A.2d 176, 180, where that court held that:

> The word "necessary" as used here in the first paragraph, considered with the context, and in the light of the surrounding circumstances, refers to what is required to accomplish testator's intention, namely, the comfortable maintenance and care of his widow, the scope, the range, and the cost of it. Without doing violence to every other expression in the will, it could not be said that the benefaction was conditional upon the widow's financial ability to support and maintain herself. Cf. Camden Safe Deposit & Trust Co. v. Read, 124 N.J.Eq. 599, 4 A.2d 10 (Ch. 1939), in which it was held that the word "necessary" did not refer to the beneficiary's inability to meet the expense of certain stated contingencies.

In accord is *Estate of Wells v. Sanford* (Ark. 1984), 663 S.W.2d 174, 176-77.

Based on the above authority, I conclude that the term "necessary," as used in Paragraph 4 of Karl Lindgren's testamentary trust, refers to the type of expenditures the trustee is authorized to incur. They include, at a minimum, those expenditures related to Anna's support, housing, and health care during her lifetime. The term "necessary," as used in Karl's testamentary trust, does not refer to Anna's ability to pay for those expenses from her own financial assets.

For these reasons, I specially concur with the majority's conclusion that the trustee is obliged, under the terms of Karl Lindgren's testamentary trust, to pay for Anna Lindgren's total living and medical expenses from and after the date of her husband's death.

13

I also concur with the majority's conclusions under Issues III and IV of its opinion.

_____
Justice

Justice Karla M. Gray joins in the foregoing concurring opinion.

_____
Justice

14

November 23, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

John T. Jones
MOULTON, BELLINGHAM, LONGO & MATHER
P.O. Box 2559
Billings, MT  59103

Gene A. Picotte
Attorney at Law
1066  Helena Ave.
Helena, MT  59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy